Good morning or good afternoon. Our final case on today's oral docket is 523-0251, Peoples v. Lloyd Perkins. Counsel, are you ready to proceed? Yes, Your Honor. Absolutely. May it please the Court. Good afternoon, Your Honors, Counsel. My name is Chris Bennett from the Office of the State Appellate Defender. I represent Lloyd Perkins. This Court shall reverse Lloyd Perkins' conviction for obstruction of justice where the State failed to prove beyond a reasonable doubt that the breech-style shotgun found in the pond was used in the armed robbery Perkins was charged with committing. In the alternative, this Court should remand the case for a new trial where a litany of trial errors have not been shown to be harmless beyond a reasonable doubt by the State. Finally, this Court shall remand each case for further critical proceedings where critical counsel's representation was substandard. Starting with the sufficiency of the evidence claim, the State charged Lloyd Perkins with committing obstruction of justice on July 24, 2014 with the intent to obstruct the prosecution of Lloyd R. Perkins in the offense of armed robbery knowingly concealed physical evidence in that Lloyd Perkins directed Megan Finley to the location of a shotgun that she placed in a pond located at 13077 Washington Road in Litchfield. Thus, to sustain a conviction of Perkins, the State needed to prove beyond a reasonable doubt that the shotgun placed in the pond by Finley at Perkins' direction was intended to obstruct Perkins' prosecution for the July 12, 2014 armed robbery Perkins was in custody for when the shotgun was placed in the pond. The State failed in its efforts where the evidence showed the breech-style shotgun from the pond was not like the pump-style shotgun used by co-defendant Albert Buffington during the armed robbery and later found in Buffington's possession. Finley disposed of the breech-style shotgun via the help of George Power, who had also been present during that July 12 armed robbery. Before trial, Power repeatedly, and to different people, identified the shotgun used in the robbery as a pump-style shotgun, not a breech-style one like found in the pond. First, in a videotaped interview with Illinois State Police Agent Wolf, Power repeatedly responded affirmatively when asked if the shotgun used in the robbery was a pump-style shotgun. Wolf asked Power if the shotgun had a hand on it like a pump action, and it did the motion like a pump action. Power's answer was, yes, yeah. Notably, this custodial interrogation occurred one day after the alleged robbery. Nine months later, Power's memory had not changed as to the shotgun. On March 21, 2015, Power confirmed to a defense investigator that the gun used in the robbery was a pump shotgun, not a breech-style. Power's repeated assertions that a pump-style shotgun was used by Buffington during the armed robbery were, of course, corroborated by Buffington's ownership of such a weapon. Notably, the State failed to present any physical evidence linking the breech-style shotgun from the pond to the shotgun used during the armed robbery, nor did the State present any witnesses, other than Power to even suggest that the breech-style shotgun was used during the armed robbery. The trial evidence discrepancies and the State's failure to put forth witnesses or evidence to potentially correct them leave lingering doubt about whether the recovered shotgun was actually evidence in the armed robbery, and therefore the State failed to prove beyond a reasonable doubt that Perkins, even if he directed Finley to dispose of some things, did so in order to obstruct his prosecution for armed robbery, and this Court should reverse his obstruction of justice conviction. Turning to the trial errors, unless this Court has any questions as to the litany of trial errors, we're going to rest upon the arguments in our briefs, given the limited time, and as to why those errors occurred and why any of those errors have not been demonstrated harmless beyond a reasonable doubt by the State. So turning to Crankle Counsel's ineffectiveness on both cases, once Perkins' cases were back in the circuit court from this Court's prior remand for a preliminary Crankle inquiry, Perkins was appointed Crankle Counsel to investigate ineffective assistant counsel claims. Unfortunately for Perkins, Crankle Counsel provided deficient performance that requires remand for further Crankle proceedings. It's undisputed that Crankle Counsel must provide stricter level representation. If Counsel's representation was deficient and there's a reasonable probability the result of the proceeding would have been different before Counsel's unprofessional errors, remand is required. For example, once Crankle Counsel is appointed, Counsel is obligated to sift through defendant's pro se allegations of ineffective assistance to determine if any are non-frivolous and then must present those non-frivolous claims to the trial court during the second stage at the serial hearing. In this way, Crankle Counsel's obligations are analogous to the obligations imposed on Counsel appointed to represent an indigent post-conviction petitioner whose petition survives the summary dismissal stage. And given that post-conviction Counsel need only provide reasonable assistance, Crankle Counsel should be expected to do at least what post-conviction Counsel does. Here, Crankle Counsel provided Perkins' deficient performance where he failed to present necessary supporting evidence for two of the claims raised by Perkins. Namely, that trial counsel was ineffective when he failed to further investigate Perkins' alibi about being in a Walmart when the alleged armed robbery events occurred. And two, when trial counsel failed to review certain discovery materials with Perkins before trial. Today I'd just like to focus quickly on the alibi evidence claim. Perkins alleged trial counsel failed to properly investigate Perkins' alibi that he was at the Walmart when the armed robbery occurred. Trial counsel agreed. Perkins told him about that alibi before trial. Now, trial counsel claimed that there was no surveillance video that existed from the Walmart. However, trial counsel failed to investigate Perkins' claim about his difficulty using the self-checkout machine at the Walmart and his interactions with two employees. I didn't want to detail his hearing testimony here. Perkins testified that, quote, when I was checking out, I did the self-checkout for the first time and it broke. And the young girl, like about 18, 19 years old, she came over and was trying to help me. I felt embarrassed about a kid helping me. And she called the manager and made a bigger deal because it was drawing attention to me doing it. Continued later on, there must be a work order for the machine breaking down. And I said, can you try to get a copy of that work order? Get one of the people that work at the Walmart to be witnesses for me? Apparently that didn't happen. Crankle counsel's failure to obtain objective supporting evidence of Perkins' alibi essentially doomed Perkins' ineffective assistance of counsel claim in the circuit court because he could never show prejudice sans those materials for the judge to consider. That is, Perkins' testimony alone could suffice probably to show that trial counsel acted unreasonably for failing to investigate the Walmart evidence further. But without knowing exactly what that Walmart evidence will show and what it turned out to be, it was not a way to prove that the missing evidence that trial counsel failed to investigate could have affected the outcome of the trial. And that's ultimately what the circuit court held here, that there was no, could not show prejudice. And if Crankle counsel believed the claims to be non-meritorious, he had an ethical duty not to present them. But once Crankle counsel committed to those pro se claims, it was incumbent upon Crankle counsel to present the non-frivolous claim with whatever he could to muster at the second stage Crankle hearing. And alternatively, if this court finds the record is insufficiently developed to adjudge prejudice due to counsel's deficient performance, this court should demand Crankle counsel to explain what actions he did or did not take in relation to Perkins' alibi and discovery claims. The two cases on that are PBCO Jackson and PBC Carson in the briefs. If your honors have no questions as to any of the issues that have been argued today, then we reserve the remainder of our time on rebuttal and we ask for the relief that we've requested in the briefs, your honors. Thank you. Thank you. May it please the court, counsel. I'm Becky Ray, arguing for the state. And I would first like to address the sufficiency of the evidence issue which counsel has raised. Dealing first with George Pollard's credibility, the jury assessed his credibility and found him more credible than Megan Finley. Pollard never wavered in his description that the shotgun that he saw on the day of the armed robbery that he assisted Finley to throw into the pond and that the police recovered from the pond was a sawed-off shotgun. He was not an expert on guns by his own admission and also by the statements that he made to Wolf, which could explain why he was inconsistent in his description of whether it was a pump action or a breech shotgun. He saw the weapon on the day of the offense and also at later times, as just stated. The recovered gun was consistent with his description that it was sawed-off. Whether it was breech or pump was merely an inconsistency in his testimony, which was for the jury to decide and resolve the inconsistency of. They were well aware during their deliberations due to the defendant's cross-examination of Pollard that there was inconsistency in Pollard's testimony as to the type of shotgun it was. However, the jury has the responsibility for judging the credibility of the witnesses and resolving those inconsistencies. The state even pointed out Pollard's credibility issues, but the jury resolved it in the state's favor, finding the defendant guilty of obstructing justice. This court should not usurp the jury's decision in finding Pollard credible because it was in the best position to do so. It heard the testimony and observed the witnesses as they were testifying in court. And even Finley admitted that she thought the shotgun she found and disposed of was involved in the armed robbery and could implicate some people she knew, including the defendant. The defendant alleges there was no link between the robbery shotgun and the palm shotgun, but circumstantial evidence in this case sufficiently established that link. Pollard's consistent testimony was that the gun was sawed off, whether it was breech or pump action. There were recovered shotgun shells on the Chicken Ranch property, 20-gauge, and the recovered shotgun was a 20-gauge shotgun. There were jail phone calls between persons identified as Finley and the defendant. The defendant was the only person assigned to the area where those phone calls originated, and even though a different PIN number was used than the defendant's PIN number, the defendant was still the only person who could have used the phone and used that PIN number as no one else was located in that area where the phone calls originated. The parties on those calls referred to each other as Lloyd, the defendant's first name, and Megan. The calls were of an intimate nature, discussing love and trust, such as would occur between a boyfriend and a girlfriend, and they used nicknames. And the jail administrator and Chief Deputy Sanford identified the voices as belonging to the defendant and Finley. The defendant was also familiar with the Chicken Ranch property, as you would expect if he was Finley's boyfriend of two or three years at that point. He described it in great detail, such that Finley was able to locate the geographical areas the defendant explained to her and found that thing that he desperately needed her to find and dispose of, which was the shotgun. There was also a connection between the phone calls and a fire that occurred at the defendant's residence, and during that phone call, that helps establish the identification of the people on the phone calls as defendant and Finley. There was some discussion that a cell phone had burned up, at least that's what Roger had said. Roger is the defendant's brother, and Finley testified that she knew Roger to be Roger Perkins. So the identification of the parties to the jail phone calls was well established, and in that phone call is where the discussion about finding the weapon occurred. The shotgun only had to be suited for the commission of a crime. It's a firearm, and armed robbery involves a firearm. The charging document even says firearm. It doesn't say pump-action shotgun. It doesn't say a breech shotgun. It just simply identifies firearm, and that is sufficient for the state to prove that there was the connection here. They don't have to prove that it's the exact shotgun that was used in the armed robbery, just that it was some evidence that could be used against the defendant in the prosecution of that armed robbery case, and clearly in this case, it could be. And people be free is the case, and people be bruised also, that say that it does not have to be the exact shotgun, that it only has to be suitable for the commission of that crime in order to be admitted. Now, the defendant has taken some issue with whether or not, just saying that this is not an admissibility issue, and that is true. However, it also does not have to be specific in whether or not it was pump or breech action to be suitable for an armed robbery. It can be either. I mean, we're not talking a bludgeon or a bat or a knife. It was a shotgun, and that has been established, regardless of whether it was breech or pump action. What was the length of the barrel in the recovered gun? In interest, I don't know, but it was a sawed-off handle and sawed-off barrel, according to the testimony. So both, Michelle? Pardon me? Both the handle and the barrel? I believe that to be the testimony, yes, Your Honor. And there's no dispute that it was a sawed-off shotgun that was used during the armed robbery either. The defendant also takes issue with the jury's credibility determinations, specifically with Pollard saying that when the jury's conclusions are unreasonable or improbable, they don't have to be accepted. However, the jury's determination as to credibility was not unreasonable or improbable in this case. The jury had observed testimony of Pollard and Finley and numerous other witnesses, and it didn't just rely on the testimony of Pollard to find that he was credible in this case. As I said, there was other evidence. Recovered shotgun, tennis shoes, the statements of co-conspirator Finley to Pollard, the jail phone calls. And despite some inconsistencies in the shotgun description, as I said, Pollard was found by the jury to be more credible than Finley. And the defendant has not demonstrated that no reasonable person could have accepted Pollard's testimony about whether the gun was sawed off just because he equivocated about whether it was a breach or punt. And while his description was inconsistent in his pretrial statements and his trial testimony, that does not invalidate the entirety of his testimony. The jury gets to determine how much of that testimony it believes or does not believe. And minor discrepancies, which I consider this to be a minor discrepancy, only affect the weight, and they don't render the entirety of a witness's testimony unbelievable. I see that I have just a short amount of time left. I would like to talk briefly about the fact that Crankle Counsel in this case testified that, excuse me, Glenn testified during the Crankle hearing that he had sufficient time to prepare for this defendant's case, that he was an experienced attorney, and that he had 11 months from the time he filed his motion to withdraw in that case and when the case actually went to trial, and he was adequately prepared and the case was sufficiently investigated for him to represent the defendant's interests. And, therefore, the trial court's ruling that Crankle Counsel was sufficient and that the motion to withdraw was not granted in error should also be affirmed, along with the defendant's conviction in this case. I'll entertain any questions the court may have. I would like for you to address the issue that Carissa brought up about the evidence at Walmart. Was that fully fleshed out by Crankle Counsel? I believe that that was. And, actually, I can't say by Crankle Counsel, but I will say by Glenn. Glenn testified that the defendant never told him that there was any issue with the register malfunctioning or that he had to get assistance from any employees or a manager to help him with that. And, so, if his trial counsel wasn't aware of that, I mean, truly, how can he be ineffective for, you know, not having a crystal ball to go and investigate something that the defendant never told him about? That would open up, you know, a whole can of worms where an attorney has to speculate about what, you know, defense the defendant might want to raise, even if he's not even alluded to that fact in any discussions. And there were adequate discussions between Glenn and the defendant, as I note in my brief, and that was one of the issues that was never raised, according to Glenn's testimony. So, essentially, if Glenn wasn't ineffective for not guessing what the defendant's defense might be, then how can Crankle Counsel be ineffective for that? So, I think that the issue here is, I mean, there was no prejudice because Glenn investigated what he was aware of. How can he investigate things he was not? Thank you. Justice Moore? So, what is the standard of unsufficiency? Unsufficiency? What is the standard of review of insufficiency? It is in the light most favorable to the prosecution. And when you look at this case and the facts, the sufficiency of the evidence here and the light most favorable to the prosecution, this Court should affirm the defendant's conviction. Any rational prior fact could have found all the essential elements of the offense? I believe that to be accurate, yes, based on this record. Anything else, Justice Moore? Nothing else. All right. Thank you. Thank you. Just to address a few of the comments and arguments by the State, as to the sufficiency argument, the State charged Perkins with obstruction of justice, quote, with the intent to obstruct the prosecution of Lloyd R. Perkins for the offense of armed robbery, knowingly concealed physical evidence in that Lloyd Perkins directed Megan Finley to the location of a shotgun that she then placed in a pond located at the address in Litchfield. So, it doesn't matter whether Pollard knew it was a sawed-off shotgun. What matters is, was the shotgun that was found in the pond of the same style that was used in the armed robbery? It was not, because Albert Buffington was in possession of a sawed-off pump-style shotgun. And Pollard twice said, yeah, it was a pump-style shotgun that was used by Albert Buffington during the armed robbery. There was only one shotgun used during the armed robbery. The State also says, oh, that Pollard's vacillation, you know, between trial, that was a jury issue. Pollard's vacillation between his trial testimony and what he said previously, and then also his comments, oh, I don't really even know shotguns. I mean, that just eviscerates that man's credibility as to this issue. And that's really the only evidence that the State here is relying upon to convict Mr. Perkins. As no reasonable person can accept Pollard's testimony, this Court routinely reverses convictions on sufficiency of the evidence, where no rational trier of fact could have concluded, based on the trial evidence alone, that the crime occurred, like the State charged. And here, that did not occur. The State failed in its burden to meet beyond a reasonable doubt that the breach-style shotgun that was found in the pond that was directed at the direction of Perkins by Finley was used in the armed robbery. Absent that, Mr. Perkins' conviction for obstruction of justice should be reversed. Quickly, to address opposing counsel's critical comments, Glenn testified that Perkins had never told him about the Walmart checkout machine. That just highlights why, at a minimum, this should be remanded under Senate Jackson or Carson, through this Court's 615 powers, to make sure that trial counsel, or not trial counsel, that Crankle counsel actually investigated this Walmart evidence. Because if there's Walmart evidence out there of two employees that could testify at a hearing that Perkins, yeah, I remember Perkins, yeah, it was a weird day and whatever, or that there was a work order that created, et cetera. Right now, we don't have anything in the record from Crankle counsel to support the Walmart claim. And absent that, at a minimum, this Court should remand for that 615 remand under this Court's powers. We think that there's been sufficient demonstration that ineffective assistance of trial counsel occurred and that new trials should occur under Crankle. But at a minimum, it should be remanded for further proceedings. And if Your Honors have no questions as to sufficiency, trial errors, or Crankle counsel's representation. Does the gentleman have any final questions or questions? No questions. We rest on the argument in our briefs. And thank you for your time, Your Honors. Thank you, counsel. Obviously, we will take this matter under advisement. We'll issue an order in due course. This Court is adjourned for the day.